# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GRETA CRAWFORD,<br><br>                 Plaintiff,<br><br>v.<br><br>STEVEN T. MNUCHIN,<br><br>                 Defendant. | Case No. 19-CV-703-JPS<br><br><br>**ORDER** |

**1.     BACKGROUND**

On May 13, 2019, Plaintiff filed a rambling, forty-page complaint, with 210 pages of exhibits, in which she claimed employment discrimination against her former employer, the Internal Revenue Service ("IRS" or "the Agency"), on the basis of her race, gender, and age. (Docket #1). The case started off properly; Plaintiff properly exhausted her claims before the Equal Employment Opportunity Commission ("EEOC") and filed the federal lawsuit in a timely fashion. However, after receiving notice of the Court's scheduling hearing, the litigation went downhill.

First, the parties reportedly had difficulty submitting a joint Rule 26(f) report. *See* (Docket #8). At the scheduling conference, Plaintiff challenged the Court's scheduling timeline– one-year for completion of civil cases. The Court advised Plaintiff that with her legal education and her storied litigation background– having received a juris doctor degree from Harvard Law School together with having filed *fifteen* federal cases, including bankruptcy and appeals cases—she ought to find herself well-suited to complete the necessary work required to both adequately and appropriately prepare her case for trial. Nonetheless, the Court strongly

cautioned Plaintiff that she should retain counsel, reminding her of the old adage that "a man who is his own lawyer has a fool for a client." Finally, the Court explained that the dates in its trial scheduling order were firm—unlike fine wine, civil lawsuits do not improve with age.

Initially, Plaintiff appeared to heed the Court's advice. On September 24, 2019, attorney Brian D. Hamill entered his appearance on behalf of Plaintiff. Shortly thereafter, Defendant filed its response to the complaint. The docket remained radio-silent for over three months. Then, on the eve of the summary judgment deadline, Mr. Hamill filed an interim settlement report and a motion to extend time to file dispositive motions, explaining that he was retained after the litigation began and needed more time to conduct discovery. (Docket #14, #15). The Court denied the motion a week later, explaining that it has been very clear and consistent with its deadlines and expectations from the outset. Equally important, the Court reminded Plaintiff of her obligation to timely respond to the defendant's motion. Defendant filed for summary judgment on January 17, 2020, (Docket #16). Plaintiff never responded, effectively rendering the motion unopposed. Likewise, Plaintiff did not oppose the defendant's accompanying proposed findings of fact. *See* (Docket #19). Therefore, the Court is obliged to treat Defendant's statement of facts as undisputed for the purpose of deciding the motion. Fed. R. Civ. P. 56(e)(2); Civ. L.R. 56(b)(4). For the reasons explained below, Defendant's motion for summary judgment will be granted and the case dismissed with prejudice.

2. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. **RELEVANT FACTS**

On December 27, 2010, Plaintiff, a black woman in her late forties, was hired as a customer service employee at the Agency's service center in Ogden, Utah. This client-facing administrative position required knowledge and understanding of the Agency's procedures, regulations, and various departments, as well as the ability to conduct research and address complicated questions in a timely fashion. Additionally, customer service employees were expected to speak politely and professionally to taxpayers while on the phone.

Plaintiff's training at the Agency lasted from December 27, 2010 through February 9, 2011, and consisted of a three-week classroom component, as well as on-the-job training. Plaintiff completed the training program and on February 9, 2011, she was certified as a Default Screener Contact Representative. Plaintiff also received paperwork explaining the responsibilities and duties of her position. On February 9, 2011, Plaintiff began her probationary employment period, during which time her performance—namely, the calls she fielded from taxpayers—was subject to review from experienced employees.

From the start, Plaintiff's job performance was extremely poor. Not only did she misinterpret tax regulations and fail to understand taxpayer issues, causing unnecessary delays for taxpayers, but she also failed to follow the Agency's taxpayer information disclosure rules, which made the Agency vulnerable to a lawsuit. Additionally, she did not follow protocol when answering the phone. Instead of making a good faith effort to learn from her mistakes, Plaintiff challenged her reviewers' conclusions and defended her actions, even when faced with clear evidence that she was incorrect.

On March 16, 2011, Plaintiff received her three-month review. Plaintiff's supervisor identified problem areas and explained to Plaintiff that she was still a probationary employee and her performance must improve. Plaintiff was not receptive to the criticism, and her poor job performance only continued. She failed to do even standard tasks like greet taxpayers correctly, she often asked taxpayers inappropriate personal questions, and she acted wholly unprofessionally in her dealings. By the time Plaintiff's evaluation period ended, on April 8, 2011, she had fallen short on every single metric—she had not demonstrated that she could conduct satisfactory independent research or handle routine calls; she was incompetent at using the Agency's online tools; she routinely made administrative errors; and she utterly failed to respond to management directions. In response to these reviews and corrections, she was "insubordinate to the point of rudeness." (Docket #19 at 9). In short, she lacked any redeeming qualities as an employee. Plaintiff's supervisor recommended her removal, which was affirmed by management and the Labor Relations staff. On April 30, 2011, Plaintiff was formally terminated.

Page 4 of 7
Case 2:19-cv-00703-JPS   Filed 05/04/20   Page 4 of 7   Document 21

None of the individuals in Plaintiff's workgroup report a hostile work environment, and the consensus among them is that Plaintiff was a difficult employee and received considerable instruction and opportunity to improve. The only other person in the workgroup to report any kind of personality clash with the supervisor was a white male, who felt that the supervisor could be "pretty hard on employees," though noted that generally management was "professional and fair." *Id.* at 11.

3.  **ANALYSIS**

Against this factual backdrop, Plaintiff's claims that she was fired on the basis of her race, gender, or age must be denied. 42 U.S.C. § 2000e-16 makes it unlawful for a federal employer to discriminate against an employee "based on race, color. . .[or] sex." To make a *prima facie* case of discrimination under Section 2000e, a plaintiff must show "(1) that [s]he belongs to a protected group; (2) that [s]he performed the job satisfactorily; (3) that [s]he was subjected to an adverse employment action; and (4) that similarly situated employees received more favorable treatment." *Johnson v. City of Ft. Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996).

Plaintiff has not made her *prima facie* case. She has not provided any evidence that she performed her job satisfactorily, nor is there any indication that similarly situated employees received more favorable treatment. Since there is no *prima facie* case of discrimination, the Court need not consider whether the Agency had a legitimate, non-discriminatory reason for its actions—though the foregoing facts demonstrate that, of course, it did. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Similarly, Plaintiff's claim that she was retaliated against for her prior EEOC complaints also fails. *Lord v. High Voltage Software, Inc.*, 839 F.3d

556, 563 (7th Cir. 2016) (requiring "a causal link" between the "adverse employment action" and the "statutorily protected activity."). Here, it is clear that Plaintiff was terminated because of her woefully inadequate work performance, and nothing else. Plaintiff's claim that she was subject to a hostile work environment is equally unmeritorious. Plaintiff has offered no evidence that the workplace was "both subjectively and objectively offensive," nor that her membership in a protected class was "the cause of the harassment", nor that "the harassment was severe or pervasive" such that there was a "basis for employer liability." *Lord*, 839 F.3d at 561.

Plaintiff's claim for age discrimination also fails. The Age Discrimination in Employment Act protects federal workers over the age of forty years old from workplace discrimination based on age. 29 U.S.C. § 633a. Employees suing under this statute must show, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017). Plaintiff has not provided any evidence that her age was the reason she was fired, to say nothing of a preponderance of evidence. In fact, the record demonstrates that she was fired because she routinely failed to carry out even the most basic tasks required by her position, and had a horrible attitude to boot.

Finally, the Court will not engage with Plaintiff's bizarre claim that she was the victim of a conspiracy involving the IRS and the Department of Homeland Security because it is entirely bereft of plausibility. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (requiring plaintiff to meet a "high standard of plausibility" before permitting a conspiracy claim to proceed). It should go without saying that there is no evidence to support this claim.

Page 6 of 7
Case 2:19-cv-00703-JPS   Filed 05/04/20   Page 6 of 7   Document 21

## 4. CONCLUSION

For the reasons explained above, Plaintiff's claims that she was wrongfully discriminated against on the basis of her race, gender, and age are foreclosed by the thorough and uncontested factual record. There is no evidence to support Plaintiff's lawsuit, and no reasonably jury could find in her favor—the case must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #16) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of May, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge